**Ronald BLACK, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 90–171C.**

United States Claims Court.

Nov. 13, 1991.

Ronald Black, pro se plaintiff.

William K. Olivier, Washington, D.C., with whom was Asst. Atty. Gen. Stuart M. Gerson, for defendant.

## ORDER

REGINALD W. GIBSON, Judge.

*Introduction*

This military pay case is before the court on the Defendant's Motion To Suspend Discovery Or In The Alternative For A Protective Order (June 26, 1991), pending the resolution of defendant's motion for summary judgment, to relieve defendant of the obligation to respond to plaintiff's first and second set of interrogatories filed on June 3 and 17, 1991, respectively. The parties have fully briefed the issues, and for the

following reasons, defendant's motion to suspend discovery is denied without prejudice, given a remand to the Air Force Board for Correction of Military Records (AFBCMR).

*Facts*

Plaintiff entered military service in the United States Air Force in July of 1978 and was commissioned on October 24, 1978, to the rank of second lieutenant. On October 30, 1978, plaintiff was admitted to the Veterans Administration Hospital at Albuquerque, New Mexico. There he was diagnosed as suffering from "paranoid delusions" with "suspected paranoid schizophrenia." Prior thereto, plaintiff had no previous history of psychiatric disability or any preexisting psychiatric illness. Approximately four (4) days later, on November 3, 1978, plaintiff was transferred to the Air Force facility at Sheppard Air Force Base, Wichita Falls, Texas, where his diagnosis was changed only to "paranoid personality." Plaintiff alleges that he has been subsequently informed by nine (9) different medical authorities that the correct diagnosis of his illness is "paranoid schizophrenia," as originally diagnosed by the Veterans Administration on October 30, 1978.

Five (5) months later, on March 30, 1979, plaintiff was honorably discharged from the United States Air Force, and on or about October 25, 1979, he suffered a mental breakdown. The latter event occurred just short of one year following his VA diagnosis of "suspected paranoid schizophrenia" on October 30, 1978. Plaintiff claims that his mental breakdown resulted from the defendant's mismanagement of him while he was in Officers Training School. Specifically, plaintiff claims that by transferring him on or about the ninth week of training to a different squadron, the defendant increased the stress load to an abnormally high level and then suddenly eliminated the stress at graduation, which caused the mental breakdown.[1]

Plaintiff claims that he was improperly discharged from the United States Air

1. On May 21, 1991, as well as June 11, 1991, plaintiff filed separate motions to amend his complaint. In paragraph 6 of each motion, plaintiff also alleges that he was the victim of a covert intelligence activity to convince him that he was insane.

Force under circumstances wherein he was misled as to the seriousness of his illness by the medical personnel at Sheppard Air Force Base as evidenced by the alleged erroneous paranoid personality diagnosis. Based on a correct diagnosis of paranoid schizophrenia that should have been made, plaintiff claims that he should or would have been medically retired under 10 U.S.C. § 1201.

The alleged incorrect diagnosis was first discovered by plaintiff on or about March 3, 1986, when he refiled for Veterans Administration benefits. At that time, the Disabled American Veterans advised plaintiff not to file a claim with the AFBCMR until after the Veterans Administration had made its determination. The Veterans Administration subsequently found a service-connected disability, and plaintiff thereafter filed an application to correct his records on March 17, 1989, with the AFBCMR under 10 U.S.C. § 1552, claiming that defendant failed to pay lawful benefits to which plaintiff has been entitled since 1979 as a result of his disability. On November 21, 1989, the AFBCMR denied plaintiff's claim for relief.

Following the denial by the AFBCMR, plaintiff filed a complaint in this court on February 21, 1990. Therein he contends that the AFBCMR was arbitrary and capricious in denying the prayed for relief, and, moreover, that the AFBCMR acted contrary to the clear evidence of nine (9) medical authorities in violation of its mandate. Thereafter, plaintiff mailed to defendant on June 4, 1991, a list of 17 interrogatories (1–17). Later, on June 17, 1991, plaintiff mailed to defendant a second list of eight interrogatories (18–25). As a consequence of the foregoing, on June 26, 1991, defendant filed a motion to suspend discovery in this case pending the resolution of defendant's motion for summary judgment filed on August 26, 1991. In the alternative, defendant prays that this court issue a protective order to relieve defendant of the obligation to respond to plaintiff's first and second set of interrogatories. On July 2, 1991, plaintiff responded to defendant's motion to suspend discovery, and on July 5, 1991, defendant replied to plaintiff's response.

## Contentions of the Parties

### 1. Defendant

First, defendant argues that plaintiff's interrogatories do not address any issues within this court's jurisdiction, whether or not the decision of the AFBCMR was arbitrary, capricious, or contrary to law. Secondly, defendant contends that discovery is inappropriate in this case, other than to the extent of the administrative record of the AFBCMR. Finally, defendant argues that allowing the plaintiff to pursue discovery in this record review case would unreasonably burden the defendant, without justification, and would obstruct the attainment of a prompt and speedy determination of this action, as required by RUSCC 1.

Alternatively, defendant requests that this court issue a protective order to relieve defendant of the obligation to respond to plaintiff's first and second set of interrogatories because they are oppressive and an undue burden. RUSCC 26(c)(1).

### 2. Plaintiff

First, *pro se* plaintiff contends that defendant's claim that the interrogatories do not address any issue within the court's jurisdiction is plainly wrong. Next, plaintiff argues that: (i) interrogatories # 1, # 2 and # 3 address the question of joinder and class action in seeking the number of potential plaintiffs; (ii) interrogatory # 4 addresses the question of the medical distinction between paranoid personality and paranoid schizophrenia; (iii) interrogatories # 5, # 6, # 7, # 8, # 9, # 10, and # 11 seek information leading to evidence regarding the making of an incorrect diagnosis; (iv) interrogatories # 12, # 13, # 14, and #15 seek data leading to evidence of a misdiagnosis; and (v) interrogatories # 16 and # 17 seek information on the diagnosis of sane persons. Plaintiff further contends that RUSCC 26 is to be accorded liberal treatment and permits discovery where the information appears reasonably calculated to lead to the discovery of admissible evidence.

Secondly, plaintiff argues that a serviceman is only bound by the AFBCMR decision if he cannot prove that the AFBCMR action was arbitrary or contrary to law and that therefore the process of discovery can be used to determine this criterion, *i.e.,* Board's decision arbitrary or capricious, etc.

Thirdly, plaintiff also contends that he has been the victim of a covert intelligence activity; that he has only *recently* learned of this activity; that the evidence he is seeking was unavailable to him at the AFBCMR proceedings; and that, therefore, he is now entitled to pursue discovery to attain this information to address this new issue. He reasons that since he must engage in discovery regarding critical evidence in defendant's possession, this is conclusive proof said evidence was unavailable to him before the Board.

Finally, plaintiff contends that defendant's alternative motion for a protective order lacks merit. He argues that a motion for a protective order pursuant to RUSCC 26(c) must show "good cause" in order to protect a party from "undue burden or expense" and that defendant has failed to meet this difficult burden.

*Issue*

The issues in this case are—whether the defendant in a military pay action is entitled to prevail on its motion to suspend discovery, pending the resolution of its motion for summary judgment, or alternative motion for a protective order, to relieve defendant of the obligation to respond to plaintiff's interrogatories, where plaintiff alleges that he recently learned that he was the victim of a covert intelligence activity "to convince [him] that he was insane"; and also whether the success of this program concealed such factual knowledge from plaintiff, thus preventing him from raising this issue before the AFBCMR.

*Discussion*

1. *Discovery*

Rule 26(b) of the United States Claims Court states in part that:

Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery....

RUSCC 26(b)(1). This is a liberal rule. However, "[c]ase law indicates that when considering a motion to ... suspend discovery, Rule 1 of the Federal Rules of Civil Procedure is relevant."[2] *Reliance Ins. Co. v. United States,* 18 Cl.Ct. 359, 360 (1989). RUSCC 1(a)(2) provides that courts are "to secure the just, speedy, and inexpensive determination of every action." For example, the U.S. Supreme Court has stated that RUSCC 1 is an important consideration in discovery motions.

[T]he discovery provisions [of the Federal Rules] are subject to the injunction of Rule 1 that they "be construed to secure the just, *speedy,* and *inexpensive* determination of every action." ... To this end, the requirement of Rule 26(b)(1) [of the Federal Rules] that the material sought in discovery be "relevant" should be firmly applied, and the ... courts should not neglect their power to restrict discovery where "justice requires [protection for] a party or person from annoyance, embarrassment, oppression, or undue burden or expense...." Rule 26(c). With this authority at hand, judges should not hesitate to exercise appropriate control over the discovery process.

*Herbert v. Lando,* 441 U.S. 153, 177, 99 S.Ct. 1635, 1649, 60 L.Ed.2d 115 (1979) (emphasis in original).

■ Moreover, it has been held that the judge has broad discretion to limit and restrict discovery when justice requires. *Reliance Ins. Co.,* 18 Cl.Ct. at 360 (*citing Williamson v. United States Dept. of Agriculture,* 815 F.2d 368, 382 (5th Cir. 1987)). It has also been held that where "a dispositive motion was pending when the trial judge allowed discovery, [the] order was improvidently issued." *Id.* (*quoting Summit Nursing Home, Inc. v. United States,* Cl.Ct. No. 89–74 (order of April 15,

---

**2.** RUSCC 1 is identical to Rule 1 of the Federal     Rules of Civil Procedure.

1975)). Stated differently, it should be noted from the following that "suspension of discovery is not always appropriate when a dispositive motion is pending" (*id.*):

> When a dispositive motion is pending, the question of whether to suspend discovery depends upon the relevancy of the purported discovery requests, whether the facts have been stipulated to, and whether further discovery would uncover facts which would aid the party seeking discovery in its opposition to the dispositive motion....

*Id.* at 360–361. Under this analysis, it is therefore critical to ascertain just how plaintiff will oppose defendant's motion for summary judgment in order "to determine whether its discovery requests are relevant to its opposition to the summary judgment motion." *Id.* at 361. At first glance, it appears that at least some part of plaintiff's interrogatories seek to address matters of relevant conduct by the government which plaintiff would assert in opposing defendant's dispositive motion.

▪ As a general rule, in a military pay action, the United States Claims Court will only overturn a decision of a military correction board when it is shown that the decision by the correction board is "arbitrary, or capricious, ... or unsupported by substantial evidence, or contrary to law." *Sanders v. United States*, 219 Ct.Cl. 285, 298–300, 594 F.2d 804, 813 (1979); *Long v. United States*, 12 Cl.Ct. 174, 175 (1987). The key factor in making this determination is "whether the reviewing court is limited to the administrative record, or whether it may accept additional evidence." *Long*, 12 Cl.Ct. at 175.

▪ The current state of law in military pay cases is that judicial review should be limited to the record "developed before the military review board." *Id.* at 176 (In this military pay action, the court held that a plaintiff's motion for allowance of further discovery through depositions should be denied. The court further noted that even if the plaintiff alleged that new evidence existed which, despite due diligence, he was unable to present to the AFBCMR, the appropriate remedy would probably be to remand to the board with instructions to reconsider in light of the additional evidence, and not to consider the new evidence itself.) Part of the rationale behind the practice of limiting review to the administrative record is to "prevent a usurpation of the administrative function by a court." *Id.* at 177. Accordingly, the reviewing court is generally not "empowered to conduct a *de novo* inquiry into the matters being reviewed and to reach its own conclusions based on such an inquiry." *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744, 105 S.Ct. 1598, 1606, 84 L.Ed.2d 643 (1985). Therefore, if the administrative record is found by the Claims Court to be lacking certain criteria, the role of the court is not to fill the gaps, but generally to "remand to the agency for additional investigation or explanation." *Long*, 12 Cl. Ct. at 177 (*quoting Florida Power & Light Co.*, 470 U.S. at 744, 105 S.Ct. at 1607).

Two exceptions, however, may apply in the following circumstances: first, in general military pay cases, courts reviewing administrative decisions "would permit discovery beyond the record where there was a 'strong showing of bad faith or improper behavior' that would 'create serious doubts about the fundamental integrity' of the administrative action." *Long*, 12 Cl.Ct. at 177 n. 2 (*quoting Sierra Club v. Costle*, 657 F.2d 298, 390 (D.C.Cir.1981); and secondly, "[i]in disability retirement cases, a subcategory of military pay cases, there has been a consistent practice of permitting limited augmentation of the administrative record with new evidence." *Long*, 12 Cl. Ct. at 175; *Brown v. United States*, 184 Ct.Cl. 501, 511–512, 396 F.2d 989, 1000–1001 (1968). In *Brown*, the court reasoned that disability retirement records typically did not reflect administrative hearings due to the medical testing and evaluation typical in that process. Therefore, the court allowed the new evidence in that case to fill gaps in the administrative record. *Id.*, 184 Ct.Cl. at 512, 396 F.2d at 1001. The clear pronouncement of this is that "the limited new evidence is considered during the court's own review, and does not *necessarily require* a remand." *Long*, 12 Cl.Ct. at 176 n. 1 (emphasis added).

The implication of the above quoted language is, of course, that "new evidence," nevertheless, may warrant a remand, given the totality of the circumstances. In this connection, the U.S. Supreme Court instructs that "[i]f the record before the agency ... has not considered all relevant factors ... the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Florida Power & Light Co.*, 470 U.S. at 744, 105 S.Ct. at 1607. As previously observed, the rationale behind such a decision is to prevent a usurpation of the administrative function by a court. This approach, undoubtedly, is consistent with the intendment of § 1491 U.S.C., Title 28, which provides in pertinent part that:

> (a)(2) ... In any case within its jurisdiction the court *shall* have the power to remand appropriate matters to *any* administrative or executive body or official with such direction as it may deem proper and just....

(emphasis added).

Against this background, we believe that the most judicious method to address the plaintiff's allegation of covert activity is to remand the case to the AFBCMR for an appropriate investigation. Several patent reasons exist to warrant exploring this issue, and particularly to explore it by the process of remand. Of particular importance is the fact that *pro se* plaintiff has made this strong allegation. In addition, in reviewing the contents of the administrative record, it is clear that this issue was not before the Board. It is therefore paramount, in the interest of justice, that plaintiff's contention be appropriately and fairly addressed.

While this court is constrained to conclude that justice requires inquiry into the foregoing allegations, said consideration should not initially be at this level. Rather, we believe that the most appropriate and efficient method to address this issue is through a remand to the AFBCMR. The Board unquestionably has more experience in undertaking such investigations and in hearing these particular matters. Therefore, we believe that the efficient adminis-

tration of justice will be served if the Board conducts the appropriate investigation, hold a due process hearing, and supplement the administrative record with its decision and supporting evidence. Thereafter, this court can proceed with a traditional *Sanders* type review of the Board's findings and conclusions.

Since *pro se* plaintiff has averred that he was covertly misled by activity to find him insane, which knowledge was unavailable below, we are constrained to conclude that this "case typically should be remanded to the administrative board for reconsideration." *Long*, 12 Cl.Ct. at 176. Further, in this regard, the *Long* court (at 12 Cl.Ct. 177), stated that:

> Where an administrative record is found somehow lacking by the review court, its role is not to fill in the gaps. Rather, according to the Supreme Court, "... the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation" [citing *Florida Power & Light Co. v. Lorion*, 470 U.S. at 744, 105 S.Ct. at 1607].

*Conclusion*

In view of all of the extant circumstances, and particularly the fact that this is not such a "rare circumstance," *supra*, defendant's motion to suspend discovery or in the alternative for a protective order is DENIED without prejudice, and subject case is hereby REMANDED to the AFBCMR to—(i) investigate whether or not plaintiff was the subject of a "covert intelligence activity to [establish] that he was insane"; (ii) prepare a report respecting said investigation; (iii) make a certified copy of the entire and complete investigatory report available to Mr. Black; (iv) thereafter the Board shall hold a hearing of record to permit Mr. Black to call and cross-examine witnesses and produce any relevant evidence; and finally (v) the Board shall submit to this court within six months from the date of this order (*i.e.*, on or before May 13, 1992) its report supplementing the administrative record consisting of its factual findings and conclusions of law.

Defendant's counsel shall prepare and file with this court (and serve on plaintiff) status reports, every 90 days regarding the remand proceedings, the first being due on or before February 11, 1992. All other proceedings in this court are hereby stayed pending the above action by the Board.

IT IS SO ORDERED.