Ronald **BLACK**, Plaintiff,

v.

The **UNITED STATES**, Defendant.

No. 90–171C.

United States Claims Court.

Feb. 11, 1992.

Ronald Black, pro se.

William K. Olivier, Washington, D.C., with whom was Asst. Atty. Gen., Stuart M. Gerson, for defendant.

## ORDER

REGINALD W. GIBSON, Judge.

This military pay case is before the court on Defendant's Motion For Reconsideration, Or In The Alternative, To Modify Order which was filed on November 27, 1991. For the reasons hereinafter expressed, we deny defendant's foregoing motion.

## BACKGROUND

In July of 1978, plaintiff entered military service in the United States Air Force and was commissioned on October 24, 1978, to the rank of second lieutenant. On October 30, 1978, plaintiff was admitted to the Veterans Administration Hospital at Albuquerque, New Mexico, where he was subsequently diagnosed as suffering from "paranoid delusions" with "suspected paranoid schizophrenia." Prior thereto, plaintiff had no previous history of psychiatric disability or any pre-existing psychiatric illness. In any event, approximately four days later, on November 3, 1978, plaintiff was transferred to the Air Force facility at Sheppard Air Force Base, Wichita Falls, Texas, where his diagnosis was changed to "paranoid personality." Plaintiff alleges that he has been subsequently informed by nine different medical authorities that the Veterans Administration's (VA) original diagnosis of "paranoid schizophrenia," on October 30, 1978, is the correct diagnosis of his illness.

Five months later, on March 30, 1979, plaintiff was honorably discharged administratively from the Air Force, and on or about October 25, 1979, he suffered a mental breakdown. Plaintiff claims that his mental breakdown resulted from the defendant's mismanagement of him while he was in Officers Training School. Specifically, plaintiff claims that by transferring him on or about the ninth week of training to a different squadron, the defendant increased the stress load to an abnormally high level and then suddenly eliminated the stress at graduation, which caused the mental breakdown.[1]

Following thereon, plaintiff now avers that he was improperly discharged from the Air Force because he was misled as to the then seriousness of his illness by the medical personnel at Sheppard Air Force Base, as evidenced by the alleged erroneous "paranoid personality" diagnosis. Based on the alleged *correct* diagnosis of "paranoid schizophrenia," as opined by the later nine different medical authorities,[2] plaintiff now claims that he should or would have been medically retired under 10 U.S.C. § 1201.[3]

---

1. Following his 1979 discharge, on July 15 and July 29, 1980, plaintiff was examined and later diagnosed on or about July 31, 1980, by Dr. Robert Albahary, a board certified civilian psychiatrist, as asymptomatic of any disorder or disability and that he "never was a paranoid personality." After receiving this diagnosis, plaintiff sought correction of his military records so that he could return to active duty. His request, however, was summarily denied that very same day, that is, on July 31, 1980. The record shows that plaintiff did not seek judicial review of that decision.

2. Specifically, the record shows, depending upon how you count multiple diagnoses by the same person, that this assertion is *substantially correct.*

3. United States Code, Title 10, Section 1201 states in pertinent part:
   "Upon a determination by the Secretary concerned that a member of a regular component of the armed forces entitled to basic pay, or any other member of the armed forces entitled to basic pay who has been called or ordered to active duty ... for a period of more than 30

This alleged erroneous "paranoid personality" diagnosis, raised initially at Sheppard Air Force Base on November 3, 1978, was first discovered by plaintiff on or about March 3, 1986, when he refiled for Veterans Administration benefits. At that time, the Disabled American Veterans Association advised plaintiff not to file a claim with the Air Force Board for Correction of Military Records (AFBCMR) until after the VA had made a determination. The VA later determined that plaintiff's illness was a service-connected disability; consequently, he filed, on March 17, 1989, his second application to correct his military records with the AFBCMR under 10 U.S.C. § 1552,[4] this time claiming that since his discharge in 1979, defendant has failed to pay plaintiff the lawful benefits to which he was entitled as a result of his *disability*. The AFBCMR, however, denied plaintiff's claim for relief with respect to his second application on November 21, 1989.

Following said denial by the AFBCMR, plaintiff thereupon filed a complaint in this court on February 21, 1990, alleging that the AFBCMR was arbitrary and capricious in denying the prayed for relief, and moreover, that the AFBCMR acted contrary to the clear evidence of nine medical authorities in violation of its mandate. Thereafter, plaintiff mailed to defendant on June 2, 1991, a list of seventeen interrogatories, and later, on June 17, 1991, a second list of eight interrogatories. In addition, the plaintiff filed two separate successive motions, on May 21, 1991 and June 11, 1991, to amend his complaint to include an allegation that he was the victim of a covert intelligence operation conducted by the defendant to convince him that he was insane. The defendant, in turn, filed, on June 26, 1991, a motion to suspend discovery in this case pending the resolution of defendant's motion for summary judgment subsequently filed on August 26, 1991.

After careful consideration of both parties' multiple motions, and particularly in light of plaintiff's "new"[5] issue as set forth in his motion to amend, the court remanded the case to the AFBCMR, on November 13, 1991, for further investigation and reconsideration, so that the AFBCMR could appropriately and fairly address the "new" issue, as required, in the interest of justice. Accordingly, the court remanded the case to the AFBCMR with the following instructions:

(i) investigate whether or not plaintiff was the subject of a "covert intelligence activity to [establish] that he was insane"; (ii) prepare a report respecting said investigation; (iii) make a certified copy of the entire and complete investigatory report available to Mr. Black; (iv) thereafter the Board shall hold a hearing of record to permit Mr. Black to call and cross-examine witnesses and produce any relevant evidence; and finally, (v) the

---

days, is unfit to perform the duties of his office, grade, rank, or rating because of a physical disability incurred while entitled to basic pay, the Secretary may retire the member, with retired pay ..., if the Secretary also determines that—
  (1) based upon accepted medical principles, the disability is of a permanent nature and stable;
  (2) the disability is not the result of the member's intentional misconduct or willful neglect, and was not incurred during a period of unauthorized absence; and
  (3) either—
    (A) ...
    (B) the disability is at least 30 percent under the standard schedule of rating disabilities in use by the Department of Veteran Affairs at the time of the determination; and either—
  (i) ...
  (ii) the disability is the proximate result of performing active duty;
  (iii) ...."

**4.** United States Code, Title 10, Section 1552 states in pertinent part: "The Secretary of a military department may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice."

**5.** Plaintiff alleges that he only *recently* learned (*i.e.*, after the AFBCMR acted) that he was the victim of covert intelligence activity "to convince him that he was insane," and therefore, he did not raise this issue before the AFBCMR. *Black v. United States*, 24 Cl.Ct. 465, 468 (1991). The plaintiff, however, did subsequently raise the issue in his motion to amend his initial complaint which was filed on two separate occasions, one on May 21, 1991, and a second filing on June 11, 1991. The May 21, 1991 motion to amend was denied, but the June 11, 1991 motion was granted.

board shall submit to this court within six months from the date of this order . . . its report supplementing the administrative record consisting of its factual findings and conclusions of law.[6]

Moreover, and pursuant to RUSCC 60.1,[7] the court concomitantly stayed "all other proceedings in this court" pending the above action by the Board.

As a result of the court's November 13, 1991 order, the defendant has filed a motion for reconsideration of said order, or in the alternative, a motion requesting the court to modify said order. Accordingly, we now address each motion seriatim.

## CONTENTIONS

*Motion For Reconsideration Or, In The Alternative, To Modify Order*:

Defendant contends that the grounds for its motion are that "(1) remand is inappropriate because, as the Court noted in its order, Mr. Black never raised the issue of covert intelligence activity before the AFBCMR and, in any event, such allegation is irrelevant to any consideration within the jurisdiction of the Court; (2) the Court lacks the power to compel the AFBCMR to hold a hearing, as directed by the Court's order, because it is a discretionary function [of the Board]; and (3) the AFBCMR lacks the power to investigate or to compel witnesses to testify, as directed by the Court's order."

In response, plaintiff agrees with the defendant that the court does not have the power to compel the AFBCMR to hold a hearing or conduct an investigation. However, the plaintiff disagrees with the defendant's allegation that plaintiff is not entitled to raise the issue of "a covert intelligence activity conducted by the defendant to convince the plaintiff that he is insane."

6. The AFBCMR has not addressed the issue of— whether the defendant conducted a covert operation to convince the plaintiff that he was insane.

7. RUSCC 60.1(a)(2)(B) states in pertinent part: "An order of remand shall . . . (B) fix the extent to which, and the duration of the period, not to exceed 6 months, *during which court proceedings shall be stayed.*" (emphasis added).

Notwithstanding this disagreement, the plaintiff indicates that he too would like the court to reconsider its order of November 13, 1991, because he has no "interest in taking part in a hearing before an agency that does not have the power to compel witnesses to testify under oath." Accordingly, he requests that *this court* proceed with the case with an order to compel defendant to answer plaintiff's interrogatories. For the reasons expressed, *infra,* and notwithstanding plaintiff's position regarding remand, we are constrained to conclude that, given the totality of the overall circumstances, such is clearly warranted.

## DISCUSSION

First and foremost, the court, in considering defendant's motion for reconsideration and its alternative motion to modify order, deems said motions to be one and the same. That is to say, defendant's motion for *reconsideration* and its motion to *modify* are in essence synonymous, inasmuch as we find that both operative terms are identical in meaning and significance. Specifically, we note that in *Webster's Third New International Dictionary,* the term *reconsider* is defined as—"to consider again, to think over, discuss or debate especially with a view to changing or revising," and the term *modify* is defined as—"to make minor changes in the form or structure, to alter, to limit or restrict the meaning of, to qualify or to change." *Webster's Third New International Dictionary,* 1452, 1897 (1976).[8] Inasmuch as the foregoing establishes that it is clear beyond cavil that the words "reconsider" and "modify" are synonymous or identical in meaning in all material particulars, we are constrained to consider defendant's motions, although filed in the alternative, as a

8. In the *American Heritage Dictionary,* the term *reconsider* is defined as—"to alter, to modify a previous decision, or to consider again," and the term *modify* is defined as—"to change in form or character, to alter, to qualify or limit the meaning of, or to change."

single motion, *i.e.* a motion for reconsideration.

Although defendant explicitly states that it has invoked RUSCC 59 of this court in bringing its motion for reconsideration of the court's November 13, 1991 *order*, it is apparent to us that RUSCC 83.2(f), entitled Reconsideration of Orders, is the correct rule pursuant to which the defendant may bring such a motion. Said rule states, in pertinent part, that:

> "a motion for reconsideration of an order *shall* be filed not later than 10 days after the date thereof."

RUSCC 83.2(f) (emphasis added). Thus, reading the rule literally, to be timely, defendant's motion for reconsideration of this court's November 13, 1991 order remanding the case, with specific instructions, to the AFBCMR was required to have been filed on or before November 23, 1991. However, the record is irrefutable that the defendant failed to file its motion for reconsideration until November 27, 1991, *i.e.*, 4 days late.

Notwithstanding that defendant's motion appears to be untimely, the court notes that, in the instant case, RUSCC 6(a) is also applicable, despite the fact that specific reference to said rule is not found in RUSCC 83.2(f). RUSCC 6(a) states in part, that:

> "In computing any period of time prescribed or allowed by these rules, ... [and] the period of time prescribed or allowed is less than 11 days, intermediate Saturdays, Sundays, and legal holidays *shall be excluded* in the computation.

(emphasis added). Thus, notwithstanding the obligatory language of RUSCC 83.2(f) requiring the defendant to file its motion to reconsider the court's November 13, 1991 order within 10 days of said order, RUSCC 6(a) grants the defendant an additional amount of time in which it may comply with the mandates of RUSCC 83.2(f). Accordingly, given the operative language of RUSCC 6(a), defendant's motion was timely filed, in that there are four days, two Saturdays and two Sundays which are not counted under the Rule. Therefore, defendant was not required to file said motion until November 27, 1991, which according to the facts herein, defendant filed on the last possible day. Inasmuch as the motion was timely filed, we now address the issues raised in defendant's motion to reconsider the court's November 13, 1991 order.

In the court's order of November 13, 1991, we directed the AFBCMR to perform five specific tasks; defendant now challenges two of those directives to the Board. First, the defendant challenges the court's order that "the Board shall hold a hearing of record to permit Mr. Black to call and cross-examine witnesses and produce any relevant evidence." Secondly, the defendant challenges the court's order requiring the Board to investigate whether or not plaintiff was the subject of a "covert intelligence activity to [establish] that he was insane." However, after careful consideration of both directives, we see no valid legal reason for granting said motion in light of the grounds proffered by the defendant in its pleadings.

In its contentions, defendant avers that (1) the court lacks the power to compel the Board to hold a hearing because such a function is within the sole discretion of the AFBCMR; and (2) the Board has no authority to "conduct an investigation or compel witnesses to testify." [9] We disagree as to both contentions; thus, we will address each contention seriatim.

First, in support of its contention that the court lacks the power to compel the Board to hold a hearing, defendant cites to Air Force Regulations (AFR) 31–3 which in Section B, para. 9(a), states in part that:

> "[e]ach application and the available military or naval records pertinent to the correction action requested will be re-

---

**9.** The defendant also contends that remand is inappropriate because plaintiff never raised the covert intelligence issue below and that, notwithstanding this fact, the issue is irrelevant. The court will not address this issue herein— because it has previously done so in its order of November 13, 1991; and because the plaintiff specifically stated in his amended complaint that the facts underlying said issue were "recently" discovered and thus "unknown" to him at the time of the hearing before the AFBCMR. *See Black v. United States,* 24 Cl.Ct. at 468.

viewed by a panel of the Board in Executive Session to determine whether to authorize a hearing, recommend that the records be corrected without a hearing, or to deny the *application* without a hearing. The Board will make this determination in all cases." [10] (emphasis added). Literally read, that regulation vests the Board with discretion to determine whether a hearing is warranted solely in the instance where a servicemember has submitted an *"application"* in request for such a hearing. That regulation is obviously inapposite here because the court's "order to remand" is not an "application" for a hearing. Moreover, there is no language in AFR 31–3, Section B, para. 9(a), which states or otherwise implies that the Board has the discretion to determine *whether* it will hear matters remanded to it by a court pursuant to 28 U.S.C. § 1491.

Specifically, Congress has unequivocally addressed, by statute, this court's powers regarding the remand of a case to an administrative body or official in section 1491, Title 28 of the United States Code, wherein it states that:

"To provide an entire remedy and to complete the relief afforded by the judgment, the court may, as an incident of and collateral to any such judgment, issue orders.... In any case within its jurisdiction, *the court shall have the power to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just.*"

28 U.S.C. § 1491(a)(2) (emphasis added). Moreover, the United States Supreme Court has instructed that "[i]f the record before the agency ... has not considered all relevant factors ... the proper course, except in rare circumstances, is to remand to the agency for *additional investigation and explanation." Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744, 105 S.Ct. 1598, 1606, 84 L.Ed.2d 643 (1985) (emphasis added). More importantly, we believe that an administrative regulation such as AFR 31–3 cannot negate the efficacy of a congressional statute. *Cf. Jones v. Commissioner of Internal Revenue*, 743 F.2d 1429, 1432 (9th Cir.1984).[11] Thus, we find that said regulation is inapposite and not a bar to the court's power to order a hearing upon remand, since the hearing is an issue which stems from this court's order pursuant to 28 U.S.C. § 1491, and not from the administrative regulation. Accordingly, we find that this court clearly has the power to direct the Board to hold a hearing upon remand when the court deems such a hearing, as here, to be "proper and just" pursuant to the requirements of § 1491.[12]

With respect to defendant's second contention that the Board has no authority "to conduct an investigation" nor "to compel witnesses to testify," the court finds that defendant's statement that the Board has no "resources" to conduct investigations is *no answer.* The absence of "resources" does not, *ipso facto*, lead to a conclusion of an *absence of power.* The Board should, of course, utilize *all avail-*

---

**10.** Defendant also cites to *United States v. Shearer*, 473 U.S. 52, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985), to support its proposition that the court lacks the power to compel the Board to hold a hearing, because whether the Board will hold a hearing is a discretionary function. The court notes that the issues in *Shearer* are distinguishable from those herein, in that the court in *Shearer* was faced with the decision of questioning the military's management of its personnel. Specifically, the issues in *Shearer* raised "questions as to basic choices about discipline, supervision, and control of a servicemember." Understandably, such matters are not within the ambit of the scope of this court's remand order.

**11.** The Ninth Circuit Court of Appeals stated that the Commissioner "may not prescribe any regulations which are not consistent with the federal tax statutes or which add a restriction to

a statute which is not justified by the statutory language or intent of Congress." *Jones v. Commissioner of Internal Revenue*, 743 F.2d at 1432. Thus, by analogy, a military regulation promulgated by an administrative body, *i.e.*, the Department of the Air Force, which is inconsistent with a federal statute or is read to restrict to a statute which is not justified by the statutory language or the intent of Congress is facially invalid. *Id. See Government of Guam v. Koster*, 362 F.2d 248, 252 (9th Cir.1966).

**12.** In addition, AFR 31–3, Section A, para. 4, states that: "[t]he Board shall have jurisdiction to review and determine *all matters properly brought before it, consistent with existing law."* (emphasis added). Obviously, § 1491 is existing law, and as such, the Board has the power to hear the case upon remand by the court.

*able* power at its disposal to conduct appropriate investigations and cause witnesses to appear in remand proceedings as it does in any other proceedings within its jurisdiction.[13] We therefore do not accept defendant's bland statements, especially in light of the often-quoted government's obligation to cut square corners with its citizens, particularly with respect to persons who have served their country in the military. *Heckler, Secretary of Health and Human Services v. Community Health Services of Crawford County, Inc.*, 467 U.S. 51, 61 n. 13, 104 S.Ct. 2218, 2224 n. 13, 81 L.Ed.2d 42 (1984).[14]

Thus, it is obvious to the court that, in the interest of justice, the servicemember is entitled to a "full and fair presentation" of his/her case. *See* AFR 31–3, Section D, para. 16(a). Procedural due process mandates it. Additionally, the Court of Claims in *Brown v. United States*, 184 Ct.Cl. 501, 396 F.2d 989 (1968), stated that "the most important operational characteristic of ... the Correction Board ... is ... their function ... to *investigate....* The purpose [of the Board] is to get at the truth of the matter." *Id.* at 510, 396 F.2d 989. Accordingly, it is very clear to the court that for the limited purpose of our remand, the Board has the power to act as Congress deemed appropriate within the purview of § 1491(a)(2). More importantly, and in furtherance of § 1491, and to afford the plaintiff his panoply of rights, consistent with fundamental fairness, the court's order of November 13, 1991, must be complied with, in full, by the AFBCMR.

## CONCLUSION

Given the foregoing, we are compelled to DENY defendant's motion for reconsideration inasmuch as we find that the court has the power to direct the Board, upon remand, to hold a hearing, as well as to conduct an appropriate investigation, pursuant to 28 U.S.C. § 1491. Finally, to the extent that the AFBCMR concludes that it is unable to carry out any part of this court's directives, it shall seek the aid and assistance of the Secretary in complying with this remand order.

IT IS SO ORDERED.

---

**13.** For example, AFR 31–3, Section E, para. 18, specifically states that: "[d]uring the course of review of the case, ... the Board may require the applicant to obtain, or the Board may obtain, such further information as it may consider essential to a complete and impartial determination of the facts and issues." AFR 31–3, Section D, para. 16(d), states that: "all testimony before the Board will be given under oath or affirmation." AFR 31–3, Section C, para. 13, indicates that: "[i]t will be the responsibility of the applicant to notify the witnesses and to arrange for their appearance at the time and place set for hearing." However, and most importantly, AFR 31–3, Section D, para. 16(a), states that: "[t]he hearings will be conducted ... to accord the applicant an opportunity to make a *full and fair presentation of his or her case."* (emphasis added).

**14.** The Supreme Court in *Heckler* states that: "It is no less good morals and good law that the Government should turn square corners in dealing with the people than that the people should turn square corners in dealing with their Government." *Heckler, Secretary of Health and Human Services v. Community Health Services of Crawford County, Inc.*, 467 U.S. at 61 n. 13, 104 S.Ct. at 2224 n. 13 (citing *St. Regis Paper Co. v. United States*, 368 U.S. 208, 229, 82 S.Ct. 289, 301, 7 L.Ed.2d 240 (1961)). *See also Federal Crop Insurance Corp. v. Merrill*, 332 U.S. 380, 387–88, 68 S.Ct. 1, 4–5, 92 L.Ed. 10 (1947) (Jackson, J., dissenting) ("It is very well to say that those who deal with the Government should turn square corners. *But there is no reason why the square corners should constitute a one-way street"*) (emphasis added).