Frank A. HUTTER

v.

The UNITED STATES.

No. 191–61.

United States Court of Claims.

May 14, 1965.

Paul R. Harmel, Washington, D. C., for plaintiff, Geiger, Harmel & Schuchat, Washington, D. C., of counsel.

Charles M. Munnecke, Washington, D. C., with whom was Asst. Atty. Gen. John W. Douglas, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS and COLLINS, Judges.

DURFEE, Judge.

■ This is an action for disability retirement benefits under Section 402(a) of the Career Compensation Act of 1949, 63 Stat. 802, 816–817, 37 U.S.C. § 272(a) (1952), as amended, 10 U.S.C. § 1201 et seq. (1958). The question to be resolved is whether or not the decision of the Air Force Board for Correction of Military Records denying plaintiff's application for a disability retirement rating was arbitrary, capricious, unsupported by evidence, or contrary to the laws and regulations relating to disability retirement. These are the set boundaries within which this court will review such Board action. Thompson v. United States, 156 Ct.Cl. 158 (1962).

Plaintiff's trouble began in the latter part of October, 1955 when he was hospitalized for high blood pressure at a United States Air Force Hospital in Germany. Prior to that time he had served as a pilot in World War II, and then later in the Korean campaign. At the time of his hospitalization plaintiff had attained the rank of a captain and had served on active duty for approximately nine years.

The clinical records covering the period plaintiff was hospitalized in Germany from October 31, 1955, to November 4, 1955, disclose that on entry his face was flushed, and his blood pressure was 154/104. Plaintiff was given a complete hypertensive workup. Doctor's progress notes show that subsequent to the examination of plaintiff at the time he entered the hospital his blood pressure fell to normal limits. He was discharged with a final diagnosis of "Hypertensive cardiovascular disease, benign." Plaintiff returned to flying duty about three months after his release.

Plaintiff next entered a hospital in June 1957 in Morocco, and remained there for 35 days for treatment of a severe arthritic condition of the knee. At the time of entry his blood pressure was 130/90.

In August, 1958 plaintiff was returned to the United States, as he was scheduled for release from active duty on August 31, 1958, under a reduction in force program. Plaintiff was examined by Captain Neil H. Newsom at Norton Air Force Base on August 26, 1958. Plaintiff stated that he had been hospitalized in Germany and Morocco, but the records do not show that he particularized the disabilities for which he was hospitalized. A report of medical examination submitted by Captain Newsom disclosed that plaintiff's blood pressure reading was 158/98. The examination and medical history report bore the following notation, "Patient presents elevation of blood pressure * * * which has never been clinically evaluated." Plaintiff was then referred to the orthopedic clinic for further evaluation.

The examination report by the orthopedic clinic showed five defects in plaintiff's condition. These were a chalazion of the right eyelid; arthritis of the right knee; Dupuytren's contracture of the right hand and foot; superficial scars, and an undetermined hypertensive vascular disease that was manifested by high blood pressure and albuminemia. The recommendation portion of the report read, "Advised to have albuminemia and elevation of blood pressure evaluated thru Veterans Administration."

Plaintiff's case was then referred to a Medical Board at Norton Air Force Base. After examining plaintiff and considering his case, the Medical Board Report showed the Dupuytren's contracture, the arthritis, and suspected hypertension with a diagnosis not established. The Board recommended transfer to another facility for further observation and for a possible hearing before the Physical Evaluation Board.

Plaintiff was then sent to a hospital at Lackland Air Force Base in Texas. He was hospitalized for a four-day period at which time the doctors were informed of his prior hospitalization in Germany for hypertension. They also had the Medical Board's disagnosis of suspected hypertension. Upon entry, plaintiff had a blood pressure reading of 170/115 under circumstances not shown. There was no diagnosis made at Lackland in respect to the hypertension. It further appears from the record that plaintiff did not have a complete hypertension workup. Plaintiff then returned to Norton Air Force Base.

At Norton plaintiff was told by Captain Newsom that his status relating to disability would be based upon the degree of disability he had under the Veterans Administration Schedule for Rating Disabilities, and suggested plaintiff be examined by them. He was told by the non-commissioned officer in charge of the Administrative Section of the hospital at Norton that his record would be reviewed after the Veterans Administration had made its report. Plaintiff was then discharged on October 18, 1958, and thereafter made application to the Veterans Administration for disability compensation.

On November 21, 1958 plaintiff was given a physical examination by the Veterans Administration. A medical report of the examination includes pertinent notations, some of which are as follows:

"*Head, Face, and Neck:* Flush to Face, severe

\* \* \* \* \* \*

*Cardiovascular System:*

"Applicant has been hospitalized (1954–1955) for hypertension—Is experiencing frequent epistaxis, headaches and some dizziness and currently is under treatment for hypertension by a private MD. He has had numbness down inner aspect of rt. arm for past 18 months—"constantly asleep." No precordial pain or palpitation have been noted but has exertional dyspnea.

*Current Rx*—Anti-hypertensive Rx ( ?)

\* \* \* \* \* \*

"*Blood Pressure:*
Sitting ............... S 196–D 118
Sitting after exercise .... S 212–D 112
2 Min. after exercise .... S 200–D 118

\* \* \* \* \* \*

"The physician's diagnosis consisted of the following:

*Diagnosis:*

1. Hypertension — arteriosclerotic Ht. disease and sinus tachycardia.

2. Normal eye examination (see specialist's report).

3. Arthritis, rt. knee (clinically) —not shown on X-ray.

4. Dupuytren's Contracture, rt. hand and foot."

On January 22, 1959, the Veterans Administration rated plaintiff 30 percent disabled as a result of arteriosclerotic heart disease. The other maladies did not contribute to the 30 percent rating. The report stated that the " \* \* \* VA examination makes a diagnosis of hypertensive arteriosclerotic heart disease with a reading of 196/118 with normal urinalysis. \* \* \*"[1]

After plaintiff received notification from the Veterans Administration of the 30 percent rating, he returned to Norton Air Force Base and learned that both Captain Newsom and the non-commissioned officer in charge of the Administrative Section of the hospital had been transferred. Plaintiff was referred to a legal officer at Norton who told plaintiff the only thing he could do was to advise plaintiff to file an application with the Air Force Board for Correction of Military Records. It is reasonably clear from

[1.] Arteriosclerotic heart disease is the result of high blood pressure associated with arterial or vascular changes. It is quite similar to hypertensive cardiovascular disease.

the evidence that plaintiff went to the Veterans Administration for a physical examination under the impression that the report and evaluation of the Veterans Administration would be reviewed by appropriate officials of the Air Force for the purpose of determining his eligibility for disability retirement.

On February 18, 1959, plaintiff submitted to the Air Force Board for Correction of Military Records an application requesting that his military records be corrected so that he might receive physical disability retirement. The Board for Correction referred the matter to the Surgeon General for consideration. On August 5, 1959, the Office of the Surgeon General sent a memorandum-opinion of plaintiff's case to the Board for Correction. The opinion stated that plaintiff's " * * * defects in question had been adequately studied prior to separation. * * * " The opinion concluded that "It is the opinion of the Surgeon General that the applicant was properly evaluated prior to his separation, that he was not unfit for further military service at that time, and that an alteration of the record is not justified."

On the basis of the Memorandum-opinion by the Surgeon General, the Air Force Board for Correction of Military Records denied plaintiff's application without a hearing on January 11, 1960. Plaintiff then requested the Board to reconsider, and on June 7, 1960, the Board denied the request by letter to plaintiff. The letter of denial stated in pertinent part:

> " * * * The Air Force Surgeon General has reviewed the medical aspects of your case and has advised the Board that in his opinion there were no defects noted in either the service hospital clinical records or the separation physical examination which would have warranted appearance before a Physical Evaluation Board and *that the defects in question had been adequately studied prior* to separation. * * * " [Emphasis supplied.]

Plaintiff testified at trial that since his separation from the service his condition has worsened, and as a result of his hypertension he has been unable to obtain employment. We have found no reasons to disbelieve plaintiff's assertions.

Plaintiff now contends that the action of the Correction Board in refusing to correct his records to show a service connected disability was arbitrary, capricious and erroneous and not supported by substantial evidence. We have reached the same conclusion.

■■ The Correction Board was under no duty to defer to the conclusion reached by the Veterans Administration if there was substantial evidence before the Board to the contrary. Kearney v. United States, 156 F.Supp. 928, 930, 140 Ct.Cl. 523, 525–526 (1957), cert. denied, 360 U.S. 916, 79 S.Ct. 1433, 3 L.Ed.2d 1533 (1959). While the Veterans Administration's determinations of the degree of disability are not conclusive upon this court, John Stewart Andrews, Executor et al. v. United States, 163 Ct.Cl. 126, 131–132 (1963), we do believe that the results of the medical examination given by the Veterans Administration only one month after plaintiff's discharge are entitled to considerable weight in our review of the Correction Board's action, especially in view of the failure of the Air Force to adequately evaluate plaintiff's condition of hypertension. The examination by the Veterans Administration showed plaintiff to have extremely high blood pressure. When plaintiff was merely sitting, the reading was 196/118.

At trial, one of plaintiff's expert witnesses, Dr. Cerini, a well qualified private practitioner specializing in cardiology, stated that normal blood pressure for a man plaintiff's age should be somewhere under 150 systolic and 90 diastolic. (Yet only one month after discharge plaintiff's reading was 196/118.)

Dr. Cerini further testified that on September 25, 1958, when plaintiff was still in the service, and about one month before his discharge, he had taken plaintiff's blood pressure and found that it ran as high as 164 to 198 systolic and 116 to

138 diastolic. Dr. Cerini expressed the opinion that the presence of albumen in the urine in the report of the medical examination at Norton showed hypertension, and that the kidneys were probably the source of the condition. He further stated that he liked to see extensive tests done when such a condition is suspected.

Another expert physician testified that considering plaintiff's medical history and records, including the reports of the medical examinations made of plaintiff at Norton and Lackland, an adequate study was not made of the hypertension condition at Norton or Lackland. He stated that at Lackland plaintiff did not receive "a medical workup which included specific attention to hypertension or high blood pressure."

The third expert, the Veterans Administration doctor who examined plaintiff, stated that the blood pressure readings of plaintiff were abnormally high for a man of his age.

There is language in our opinion in Furlong v. United States, 153 Ct.Cl. 557, 566 (1961) that the admissibility of such expert testimony is doubtful. However, the evidence sought to be admitted in Furlong, supra,[2] consisted of the testimony of certain doctors who gave their opinions of what plaintiff's condition had been *thirteen* years before the date of their examination of him. In this case, the testimony consists of reports of physical examinations contemporaneous with the time of discharge, and opinion relating to the proper evaluation of plaintiff's blood pressure.

It is highly significant that defendant introduced no witnesses with the comparable expertise of plaintiff's witnesses, and in no way refuted their testimony. We feel, therefore, disposed to accept the conclusions made by plaintiff's experts. Applying these conclusions to the facts of the case, we believe that the report of medical examination at Norton in August, 1958 when plaintiff's blood pressure reading was 158/98 should have put defendant's physicians on notice that plaintiff might be subject to hypertension. Plaintiff then and there should have been afforded a full hypertension workup. In any event, once the Medical Board Report showed suspected hypertension, and plaintiff was sent to Lackland and he showed a blood pressure reading of 170/115 at Lackland, then certainly a complete hypertension workup should have been given. When plaintiff returned to Norton, he was still not given the full tests for hypertension.[3] Yet plaintiff certainly had not been miraculously cured of this defect at that time. Dr. Cerini's examination on September 25, 1958, showed very high blood pressure readings, and the Veterans Administration physical only one month after discharge showed a reading of 196/118.

Our conclusion that plaintiff's condition showed enough of a suspected hypertension that he should have been given a complete examination with the attendant tests for hypertension is 180 degrees out of phase with the language in the opinion of the Surgeon General that " * * * The defects in question had been adequately studied prior to separation. * * * " That statement was the basis for the Surgeon General's conclusion that plaintiff was properly evaluated prior to separation. The Surgeon General's conclusion in turn formed the basis for the Correction Board's denial of plaintiff's request for correction of records to show a disability.

■■ This court has stated that the Correction Board is arbitrary when it

---

2. It should be noted that regardless of the doubt concerning the admissibility of the evidence in Furlong, supra, the court did consider it competent in a limited manner.

3. AFM 160–1, 30 April 1953 entitled, "Medical Service—Medical Examination" which established procedures and techniques for all medical examinations normally given by the Air Force, and which was in effect the date plaintiff was released from active duty, seems to require a much more thorough analysis of blood pressure readings than plaintiff was afforded. See Finding 30(b).

follows an *ex parte* opinion of the Surgeon General which is inaccurate and contrary to the evidence. Suter v. United States, 153 F.Supp. 367, 369, 139 Ct.Cl. 466, 471 (1957); Weiner v. United States, 148 Ct.Cl. 445, 454 (1960). We so hold here. The Surgeon General's opinion was inaccurate. Plaintiff's defects had not been studied adequately prior to separation. The Correction Board, in following this inaccurate *ex parte* opinion was arbitrary and capricious. Plaintiff is therefore entitled to recover disability retirement pay.

Our Trial Commissioner has found, and we agree, that the disability rating of 30 percent given by the Veterans Administration is conservative, reasonable and justified. Since plaintiff has asked for no more than a 30 percent disability rating under the Career Compensation Act, we see no valid reason for remanding the case in order to determine the percent of disability.

Accordingly, plaintiff is entitled to recover disability retirement pay for a person 30 percent disabled from the date of his release from active duty on October 18, 1958 to date of judgment, less disability compensation received from the Veterans Administration. The amount of recovery will be determined pursuant to Rule 47(c) of the rules of this court.