Ronald **BLACK**, Plaintiff,

v.

The **UNITED STATES**, Defendant.

No. 90–171C.

United States Claims Court.

Nov. 13, 1991.

---

Ronald Black, pro se.

William K. Olivier, Washington, D.C., with whom was Asst. Atty. Gen. Stuart M. Gerson, for defendant.

## ORDER

REGINALD W. GIBSON, Judge.

*Introduction*

Plaintiff, Ronald Black, filed a motion to "seal all records" in this military pay action on May 3, 1991. He argues that the right to inspect and copy judicial records is not absolute, and that courts have supervisory powers over their own records and may, therefore, deny access where they find the use of such records to be "a vehicle for improper purposes." *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 598, 98 S.Ct. 1306, 1312, 55 L.Ed.2d 570, 580 (1978). Plaintiff further argues that his interest in seeking to seal the records outweighs the public's interest. While we recognize that there are exceptions to the general rule of open access to public records, on the facts at bar, this court denies plaintiff's motion to seal all records.

*Facts*

Plaintiff entered military service in the United States Air Force in July of 1978 and was commissioned on October 24, 1978, to the rank of second lieutenant. On October 30, 1978, plaintiff was admitted to the Veterans Administration Hospital at Albuquerque, New Mexico. There he was diagnosed as suffering from "paranoid delusions" with "suspected paranoid schizophrenia." Plaintiff had no prior history of psychiatric disability or any pre-existing psychiatric illness. On November 3, 1978, he was transferred to the Air Force facility at Sheppard Air Force Base, Wichita Falls, Texas, where his diagnosis was changed to "paranoid personality." Plaintiff alleges that he has been informed by nine different medi-

cal authorities that the correct diagnosis of his illness is "paranoid schizophrenia," as originally diagnosed by the Veterans Administration.

On March 30, 1979, plaintiff was honorably discharged from the United States Air Force. On or about October 25, 1979, he suffered a mental breakdown, and claims that it was the result of the defendant's mismanagement of him while in Officers Training School. Specifically, plaintiff claims that by transferring him on or about the ninth week of training to a different squadron, the defendant increased the stress load to an abnormally high level and then suddenly eliminating the stress at graduation, which caused the mental breakdown.[1]

It is also averred by plaintiff that he was improperly discharged from the United States Air Force and that he was misled as to the seriousness of his illness by the medical personnel at Sheppard Air Force Base as evidenced by the alleged erroneous paranoid personality diagnosis. Based on a diagnosis of paranoid schizophrenia, plaintiff claims that he should have been medically retired under 10 U.S.C. § 1201.

Plaintiff first discovered the alleged incorrect diagnosis on or about March 3, 1986, when he refiled for Veterans Administration benefits. The Disabled American Veterans advised the plaintiff not to file a claim with the Air Force Board for Correction of Military Records (AFBCMR) until the Veterans Administration had made its determination. The Veterans Administration subsequently found a service-connected disability, and plaintiff then filed a petition with the AFBCMR under 10 U.S.C. § 1552, claiming that defendant failed to pay lawful entitlements to plaintiff since 1979 in view of his disability. On November 21, 1989, the AFBCMR denied plaintiff's claim for relief.

Following the denial of the AFBCMR, plaintiff filed a complaint in this court on

---

1. Plaintiff also alleges in his motion to amend his complaint filed on May 21, 1991, that he could have been the victim of a covert intelligence activity to convince him that he was insane. However, he proceeds on the theory that his mental breakdown was caused by defendant's mismanagement.

February 21, 1990. Therein, he contends that the AFBCMR was arbitrary and capricious in denying the prayed for relief, and that the Board acted contrary to the clear findings of nine medical authorities in violation of its mandate. On May 25, 1990, plaintiff filed his *first* motion in this court to seal the records in this case. At this point, the record consisted of the February 21, 1990 complaint, and a February 23, 1990 order of this court *sua sponte* dismissing the complaint for want of jurisdiction, *i.e.*, on the grounds that the statute of limitations for filing a claim had expired. The defendant opposed this initial motion to seal records on several grounds, including the allegation that this court lacked jurisdiction to consider said May 25, 1990 motion due to plaintiff's previous April 17, 1990 appeal of the Claims Court dismissal of the case to the United States Court of Appeals for the Federal Circuit. This court agreed with the defendant that it lacked the necessary jurisdiction, and therefore we denied plaintiff's May 25, 1990 motion to seal his records.

On May 3, 1991, one year later, plaintiff has again filed a motion to seal all records in this case.

*Contentions of the Parties*

1. Plaintiff

The plaintiff recognizes the common law right of access to court records; however, he argues that his motion lies within a recognized exception to the common law general rule.

First, plaintiff avers that the right to inspect and copy judicial records and files is not absolute, and that access has been denied where court files might have become a vehicle for improper use. He further argues that this is a case where such records may become a vehicle for improper purposes, and should, therefore, be sealed.

Secondly, plaintiff contends that the court must balance the individual's interest in keeping the information private against the public's interest in allowing free access to court records. In this scenario, plaintiff argues that his individual interest in keeping records private outweighs the public interest.

While plaintiff acknowledges the general rule that only those records that are filed *in camera* are to be sealed, he argues, nevertheless, that the U.S. Supreme Court has established that *pro se* parties should be granted consideration such as overlooking technical rules as to which they are not informed and as a result of which the opposing party suffers no real damages.

2. Defendant

Defendant, of course, opposes plaintiff's motion to seal records. First, it contends that plaintiff has knowingly waived any right that he may have had to seal the records by failing to file his motion to seal records *contemporaneously* with the original complaint as required. Defendant argues further that the complaint has been a public record since February, 1990, when it was voluntarily filed by plaintiff and that, given the explicit factual allegations contained therein regarding the state of his mental condition, any privacy plaintiff wishes to protect has already been fully exposed by his own free actions.

Secondly, defendant contends that any benefit that plaintiff can now derive from sealing the court's records is outweighed by the overbearing administrative burden placed upon the court in maintaining the sealed records and upon defendant in conducting litigation with sealed records. Finally, defendant argues that there is no probative evidence proffered depicting any circumstances where these records might be used for improper purposes, as plaintiff contends.

*Issue*

The issue, therefore, is whether the plaintiff has a right, on these facts, to seal court records in these proceedings.

*Discussion*

It is a well-recognized axiom that there is a common law right of public access to judicial records. *Nixon v. Warner Communications, Inc.*, 435 U.S. at 597, 98 S.Ct. at 1311–1313, 55 L.Ed.2d 570 ("[i]t is clear that the courts of this country recognize a

general right to inspect and copy public records and documents [footnote omitted], including judicial records and documents [footnote omitted]."); *Pratt & Whitney Canada, Inc. v. United States,* 14 Cl.Ct. 268, 272 (1988) ("[t]here is a long-standing common law right of public access to judicial records."). This right of access "is essential to the preservation of our system of government." *Id.* at 273. It applies to the judiciary as well as to the legislative and executive branches of government. *Craig v. Harney,* 331 U.S. 367, 374, 67 S.Ct. 1249, 1254, 91 L.Ed. 1546 (1947) ("[t]here is no special prerequisite to the judiciary which enables it, as distinguished from other institutions of democratic government, to suppress, edit, or censor events which transpire in proceedings before it."). Moreover, the right of public access applies to those records of criminal as well as civil adjudicatory proceedings. *Publicker Indus., Inc. v. Cohen,* 733 F.2d 1059, 1066 (3d Cir.1984) ("an examination of the authority on which the Supreme Court relied ... reveals that the public's right of access to civil trials and records is as well established as that of criminal proceedings and records."). All such "pleadings, orders, notices, exhibits and transcripts filed in the Claims Court" in a civil proceeding "are made publicly available through the clerk unless the records are *expressly* filed *in camera.*" *Pratt & Whitney,* 14 Cl.Ct. at 273 (emphasis in original).

The common law right of the public to inspect and copy such records is not, however, absolute. *Nixon v. Warner Communications, Inc.,* 435 U.S. at 598, 98 S.Ct. at 1312 ("[e]very court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes."). In other words, it is in the court's discretion to seal documents if the public's right of access is outweighed by competing interests. *Huntsman–Christensen Corp. v. Entrada Indus.,* 639 F.Supp. 733, 736 (D.Utah 1986) (citations omitted). This discretion is nevertheless circumscribed by the *presumption* that "the public shall have access absent a *com-*

*pelling justification* " for an order to seal. *Pratt & Whitney,* 14 Cl.Ct. at 274 (emphasis added). For example, "[a] trial court 'must set forth substantial reasons for denying' access to its records." *Id.* at 275, *quoting United States v. Beckham,* 789 F.2d 401, 413 (6th Cir.1986). As a result, a party seeking an order bears a "heavy burden of overcoming the presumption" of public access. *Pratt & Whitney,* 14 Cl.Ct. at 275 (citations omitted). Moreover, where an order to seal records would deprive the public of information on the ability to know, an even "stronger presumption of access arises and the [c]ourt's discretion is significantly curtailed." *Huntsman–Christensen,* 639 F.Supp. at 737.

Exceptions, however, exist. Discovery materials themselves are not subject to the common law right of access to records. *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 32–36, 104 S.Ct. 2199, 2207–2209, 81 L.Ed.2d 17 (1984). However, the pleadings, transcripts, administrative records, and orders from these proceedings are not discovery materials. On the other hand, a common justification for overcoming the right of access to records is that they contain trade secrets. *In re Iowa Freedom of Information Council,* 724 F.2d 658, 661 (8th Cir.1983). However, in these proceedings, these exceptions clearly do not apply inasmuch as there is no showing of a compelling justification or the need to protect trade secrets.

Given the established principles outlined above, this court is constrained to hold that the plaintiff has failed to meet his burden. Here plaintiff seeks to merely protect his personal privacy interest. It is alleged by plaintiff that the information contained in the *complaint,* involving his mental health, is of no public interest. In addition, plaintiff argues that information contained in the record may be improperly used. *See Nixon v. Warner Communications,* 435 U.S. at 598, 98 S.Ct. at 1312 ("access has been denied where court files might have become a vehicle for improper purposes ... [for example when] 'used to gratify private spite or promote public scandal' ").

Under an analogous set of circumstances involving the reputation of a corporation, the trial court in *Huntsman–Christensen* considered whether to seal a complaint to protect a party against private harm that would purportedly occur upon disclosure of sensitive and potentially embarrassing allegations *in the complaint.* The court stated that "[e]ven if such were true, [we are] not persuaded that such harm outweighs the public's right of access to the court documents, let alone the right to know the allegations of the [c]omplaint." *Id.* at 738. *See also Brown & Williamson Tobacco Corp. v. F.T.C.,* 710 F.2d 1165, 1179 ("[s]imply showing that the information would harm [a] company's reputation is not sufficient to overcome the strong common law presumption in favor of public access to court proceedings and records."), *reh'g denied,* 717 F.2d 963 (6th Cir.1983).

In balancing the interests of the plaintiff and the interests of the public, this court holds that the plaintiff has not overcome the common law right and interest in public access to the record. The mere threat of embarrassment and private harm, as alleged, is insufficient in our judgment to justify sealing the record on the facts at bar where the precise data sought to be protected was voluntarily made a part of the public record by plaintiff as early as February 21, 1990. Against this background, this court denies plaintiff's motion, filed on May 3, 1991, to seal the records in this action.

*Conclusion*

We find, in view of the foregoing, that plaintiff has failed to provide sufficient justification to persuade this court that the record should be sealed. Moreover, plaintiff has failed to overcome the strong presumption in favor of public access to judicial records. Therefore, plaintiff's motion to seal is hereby DENIED.

IT IS SO ORDERED.