**Ronald BLACK, Plaintiff,**

**v.**

**The UNITED STATES, Defendant.**

**No. 90–171C.**

United States Court of Federal Claims.

April 28, 1993.

Ronald Black, pro se.

William K. Olivier, Washington, DC, with whom was Asst. Atty. Gen. Stuart M. Gerson, David M. Cohen, and Thomas W. Petersen, for defendant. Major William Gunn, Dept. of the Air Force, of counsel.

## ORDER

MOODY R. TIDWELL, III, Judge:

This case is before the court on defendant's motion for summary judgment. For the reasons set forth below, the court grants defendant's motion.

### FACTS

This case was filed on February 21, 1990, and was originally assigned to Judge Gibson. On November 3, 1992, it was reassigned to Judge Bruggink. Pursuant to RCFC 77(f), the case was reassigned to Judge Tidwell on November 17, 1992. The facts and procedural history of this case have been set out in the court's previous orders. *See Black v. United States*, 24 Cl.Ct. 461 (1991); *Black v. United States*, 24 Cl.Ct. 465 (1991); *Black v. United States*, 24 Cl.Ct. 471 (1991); *Black v. United States*, 25 Cl.Ct. 268 (1992). Therefore, only the facts pertinent to the disposition of defendant's motion for summary judgment will be discussed.

Plaintiff entered military service in the United States Air Force in July 1978. After completing Officer Training School (OTS), plaintiff was commissioned a second lieutenant on October 24, 1978. On October 30, 1978, while en route to his initial duty station, plaintiff was admitted to the Veterans Administration (VA) Hospital in Albuquerque, New Mexico. There he was "provision[ally] diagnos[ed]" as suffering from a "suspected paranoid schizophrenia." Prior thereto, plaintiff had no history of psychiatric disability or any pre-existing psychiatric illness. A few days later, on November 4, 1978,[1] plaintiff was trans-

---

**1.** Although plaintiff's complaint states that he    was admitted on November 3, 1978, the record

ferred to the Air Force hospital facility at Sheppard Air Force Base, Wichita Falls, Texas, where after eighteen days of observation, his diagnosis was changed to "paranoid personality." [2] On December 14, 1978, the Air Force conducted a medical examination of plaintiff for the purpose of separation from active duty. Based on that diagnosis, an administrative separation action was brought on January 17, 1979. After plaintiff was informed of the proceeding, he elected on January 30, 1979, to tender his resignation instead of challenging the proceedings.[3] Prior to his honorable discharge from the Air Force on March 30, 1979, plaintiff was offered—but declined—physical and psychiatric examinations. Based on his medical records, the Air Force rated plaintiff as having a "[s]evere paranoid personality, chronic," on January 17, 1979. This rating meant that although plaintiff's condition rendered him unsuitable for active military service, it was not a disability under law. *See* 32 C.F.R. § 725.-228 (1981).

On February 1, 1980, plaintiff requested that he be reinstated as a second lieutenant, claiming that he was now capable of performing the duties and fulfilling the responsibilities of an Air Force officer. His request was denied by the Air Force Board for Correction of Military Records (AFBCMR or Board) on May 31, 1980. Subsequently, plaintiff petitioned for reconsideration. He provided letters by two private psychiatrists indicating that he was no longer suffering from any disorder. In March 1981, the Board petitioned the Medical Standards Division of the Office of the Surgeon General (OSG) for an advisory opinion. The OSG Consultant in Psychiatry opined that the letters submitted by plaintiff "reveal[ed] no evidence to justify altering the action, disposition or diagnosis

in this case." The letters only attested to plaintiff's current condition and in no way could diagnose the effect of plaintiff's condition under military service. Plaintiff's petition for reconsideration was therefore denied by the AFBCMR on April 20, 1982.

On April 9, 1979, plaintiff filed his first claim for veteran disability benefits with the VA. Based on the VA's "severe paranoid personality" diagnosis, plaintiff's claim was denied on April 19, 1979. On March 3, 1986, plaintiff refiled for VA benefits, claiming an incorrect diagnosis. Plaintiff did not claim that his diagnosis was incorrect because he was not suffering from any disorder, but instead, that the diagnosis was incorrect because he suffered from a more serious disorder, "paranoid schizophrenia," than what the Air Force, and the VA, had originally diagnosed. In response, the Disabled American Veterans organization advised plaintiff not to file a claim with the AFBCMR until after the VA re-examined its determinations with respect to plaintiff's benefits. While in April 1979, the VA had rated plaintiff as suffering from a personality disorder, on February 2, 1989, the VA diagnosed plaintiff as suffering from paranoid schizophrenia and granted service-connected disability. On March 17, 1989, plaintiff filed an application with the AFBCMR to correct his records pursuant to 10 U.S.C. § 1552, and requested that defendant pay the benefits to which plaintiff was allegedly entitled since April 1979 as a result of his disability. The OSG again issued an advisory opinion on June 1, 1989, recommending denial of plaintiff's application. On November 21, 1989, the AFBCMR denied plaintiff's claim for relief.

Following the Board's denial, plaintiff filed a complaint in the United States

---

clearly states November 4, 1978, as the date of admission. This discrepancy is not material to the disposition of defendant's motion.

2. Plaintiff's diagnosis was listed as "[p]aranoid personality, chronic, severe.... Degree of impairment: Marked for military, and extremely guarded for social and vocational rehabilitation." The diagnosis went on to suggest that due to plaintiff's "inflexibility, suspiciousness and ... continuous resistance to structured sug-

gestions and guidance ...[,] administrative separation ... is recommended."

3. Plaintiff asserted that his election was "taken with insufficient advice," because Major Swerdlove, whom he had planned to consult, had suffered a heart attack and was therefore indisposed. However, plaintiff has not further challenged the circumstances surrounding his election to resign or the resignation itself.

Claims Court[4] on February 21, 1990. Therein he contended that the AFBCMR was arbitrary and capricious in denying relief, and that the AFBCMR had acted contrary to the clear evidence of nine medical authorities "in violation of its mandate." Plaintiff claimed that his mental breakdown, which occurred on or about October 25, 1979,[5] resulted from defendant's mismanagement of him while he was in OTS. Specifically, plaintiff alleged that by transferring him on or about the ninth week of training to a different squadron, defendant increased the stress load to an abnormally high level which culminated in a mental breakdown after his graduation from OTS.

Plaintiff amended his complaint to raise a new claim that, while at OTS, he was the victim of a covert intelligence activity to convince him that he was insane. Plaintiff also claimed that based on a correct diagnosis of paranoid schizophrenia, as diagnosed by the VA on February 2, 1989, he should have been medically retired under 10 U.S.C. § 1201[6] in March 1979. Under 10 U.S.C. § 1201, plaintiff would be entitled to retirement benefits, which by the time the

suit was filed, plaintiff claimed amounted to $222,652.00.

On February 23, 1990, Judge Gibson of this court issued an order *sua sponte* dismissing the complaint as barred by the statute of limitations. Upon plaintiff's appeal, the United States Court of Appeals for the Federal Circuit vacated and remanded. *See Black v. United States,* 928 F.2d 412 (Fed.Cir.1991). On August 26, 1991, defendant filed a motion for summary judgment, which the court chose not to rule on at that point. Subsequently, in an order dated November 13, 1991, the court remanded the case to the AFBCMR to: (i) investigate whether or not plaintiff had been the subject of a covert intelligence activity to convince plaintiff that he was insane; (ii) prepare a report respecting said investigation; (iii) make a certified copy of the entire and complete investigatory report available to plaintiff; (iv) hold a hearing of record to permit plaintiff to call and cross-examine witnesses and produce any relevant evidence; and finally, (v) submit to the court its report supplementing the administrative record consisting of its factual findings and conclusions of law. *See Black,* 24 Cl.Ct. at 470. The court

**4.** The Federal Courts Administration Act of 1992, Pub.L. No. 102–572, 106 Stat. 4506, enacted on October 29, 1992, changed the name of the United States Claims Court to the United States Court of Federal Claims. The United States Court of Federal Claims is the successor to the United States Claims Court in all respects.

**5.** Plaintiff's complaint alleges that he suffered a mental breakdown on or about October 25, 1979, approximately seven months after receiving his discharge from the Air Force. Because most of the events which allegedly caused his breakdown occurred on or about October 25, 1978, the court is inclined to believe that plaintiff intended to say that the date of his breakdown was on or about October 25, 1978. However, this factual discrepancy is of no material consequence to the court's decision.

**6.** Section 1201 provides that:

Upon determination by the Secretary concerned that a member of a regular component of the armed forces entitled to basic pay, or any other member of the armed forces entitled to basic pay who has been called or ordered to active duty ... for a period of more than 30 days, is unfit to perform the duties of his office, grade, rank, or rating

because of physical disability incurred while entitled to basic pay, the Secretary may retire the member, with retired pay ... if the Secretary also determines that—
(1) based upon accepted medical principles, the disability is of a permanent nature;
(2) the disability is not the result of the member's intentional misconduct or willful neglect ... and
(3) either—
  (A) the member has at least 20 years of service ... or
  (B) the disability is at least 30 percent under the standard schedule of rating disabilities in use by the Veterans' Administration at the time of the determination; and either—
  (i) the member has at least eight years of service[;]
  (ii) the disability is the proximate result of performing active duty; or
  (iii) the disability was incurred in line of duty in time of war or national emergency.
10 U.S.C. § 1201 (1976 & Supp. III 1979). Psychiatric disabilities are considered physical disabilities for the purposes of § 1201. *See Real v. United States,* 906 F.2d 1557 (Fed.Cir.1990); *Thompson v. United States,* 405 F.2d 1239 (Ct.Cl. 1969), *cert. denied,* 400 U.S. 918, 91 S.Ct. 179, 27 L.Ed.2d 157 (1970).

notes that the AFBCMR fully complied with this remand order.

The AFBCMR requested the Air Force Office of Inspector General (IG) to conduct an investigation on its behalf to determine whether plaintiff had been the subject of a covert intelligence activity to convince plaintiff that he was insane. The IG conducted an investigation on April 16 and 17, 1992, during which Lt. Col. Horace C. Littlejohn, the inquiring officer, reviewed existing files and conducted telephone interviews.[7] Lt. Col. Littlejohn concluded that due to the lack of specific information and records, there was no evidence of any covert intelligence activity to make plaintiff believe that he was insane.

Plaintiff failed to appear at the May 1, 1992, court-ordered hearing before the Board, and the Board met in Executive Session. Based on the administrative record and the IG's report, the Board concluded that there was insufficient relevant evidence to find error or injustice which would warrant correction of plaintiff's records. The AFBCMR found that there was no evidence that plaintiff had experienced any medical problems while attending OTS. Furthermore, the Board found that the symptoms which ultimately led to the diagnosis of paranoid personality appeared to have manifested themselves while plaintiff was en route to his first assignment. The AFBCMR noted that it found no evidence of the existence of a covert intelligence activity to convince plaintiff that he was insane. On May 11, 1992, an authentic certified copy of these records and materials was filed with the court.

Because of Judge Gibson's November 13, 1991, order remanding the case to the AFBCMR for six months, the parties were directed to supplement their 1991 briefs addressing the motion for summary judgment. Those briefs having been filed, de-fendant's motion is now ready for disposition.

## DISCUSSION

### I. JURISDICTION

▉ Pursuant to the Tucker Act, 28 U.S.C. § 1491, the Court of Federal Claims has jurisdiction over claims against the United States founded on a statute mandating compensation by the government. *United States v. Testan*, 424 U.S. 392, 401–02, 96 S.Ct. 948, 954–55, 47 L.Ed.2d 114 (1976). The secretary of a military department may adjust a military record in order to correct an error or to remove an injustice. If, as a result of such correction, an amount of lost pay, allowance, compensation or other pecuniary benefit is found to be due the claimant or his legal representative, the secretary shall then pay this amount. 10 U.S.C. § 1552 (1988 & Supp. III 1991). This statute provides the specific basis for Tucker Act jurisdiction. The Court of Federal Claims may order the correction of military records only if the order of correction is "an incident of and collateral to" a money judgment. 28 U.S.C. § 1491(a)(2) (1988); *Voge v. United States*, 844 F.2d 776, 781 (Fed.Cir.), *cert. denied*, 488 U.S. 941, 109 S.Ct. 365, 102 L.Ed.2d 355 (1988).

### II. SUMMARY JUDGMENT

Summary disposition requires that there be no genuine dispute as to any material fact, and that the moving party be entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A material fact is a fact which makes some difference in the outcome of a case. *Curtis v. United States*, 168 F.Supp. 213, 216 (Ct.Cl. 1958), *cert. denied*, 361 U.S. 843, 80 S.Ct. 94, 4 L.Ed.2d 81 (1959). In considering a motion for summary judgment, the evi-

---

**7.** Lt. Col. Littlejohn interviewed plaintiff and seven former members of plaintiff's flight whose names plaintiff had provided. Only two interviewees remembered plaintiff, and they indicated no recollection of any of the intelligence activities, thefts, or bizarre incidents which plaintiff claims happened. Plaintiff, during his interview with Lt. Col. Littlejohn, claimed to have been the victim of covert intelligence activities including the theft of paycheck and other personal items; members of his flight not associating with him; his roommate's reporting him for not keeping his locker in order; people following him; messages coming over the radio; and electronic bugs placed in his car.

dence must be viewed and inferences drawn in a light most favorable to the non-moving party, and any doubt must be resolved against the moving party. *Litton Indus. Prod., Inc. v. Solid State Sys. Corp.*, 755 F.2d 158, 163 (Fed.Cir.1985); *D.L. Auld Co. v. Chroma Graphics Corp.*, 714 F.2d 1144, 1146 (Fed.Cir.1983). Plaintiff must, in response to a motion for summary judgment, set forth "specific facts" showing that there is a genuine issue for trial. *Lujan v. Defenders of Wildlife*, — U.S. ——, ——, 112 S.Ct. 2130, 2137, 119 L.Ed.2d 351 (1992) (quoting FRCP 56(e), the analogue to RCFC 56(f)). These "specific facts" will be taken as true for the purposes of the motion, and plaintiff may not simply rely on the "mere allegations" of fact contained in his pleadings. *Id.*

### III. STANDARD OF REVIEW

■ Plaintiff is bound by the AFBCMR's denial to correct his records, unless he can establish by "cogent and clearly convincing evidence" that the decision was arbitrary, capricious, unsupported by substantial evidence or contrary to law. *Wronke v. Marsh*, 787 F.2d 1569, 1576 (Fed.Cir.), *cert. denied*, 479 U.S. 853, 107 S.Ct. 188, 93 L.Ed.2d 121 (1986); *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed.Cir.1983); *Sanders v. United States*, 594 F.2d 804, 811 (Ct.Cl.1979); *Dorl v. United States*, 200 Ct.Cl. 626, 633, *cert. denied*, 414 U.S. 1032, 94 S.Ct. 461, 38 L.Ed.2d 323 (1973); *Wyatt v. United States*, 23 Cl.Ct. 314, 318–19 (1991).

■ To overturn the AFBCMR's decision, plaintiff must establish the existence of error, and must also show "an adequate nexus between the error or injustice and [plaintiff's] separation from service without disability compensation." *Renicker v. United States*, 17 Cl.Ct. 611, 614 (1989) (citation omitted). Title 10, section 1552 of the United States Code confers a significant degree of discretion to the secretaries of the military. Thus, in reviewing the AFBCMR's decision, the court must presume "that the administrators of the military, like other public officers, discharge[d] their duties correctly, lawfully, and in good

faith." *Sanders*, 594 F.2d at 813. Determining who is fit or unfit to serve in the armed forces is not a function of the judiciary. *Orloff v. Willoughby*, 345 U.S. 83, 93–94, 73 S.Ct. 534, 539–40, 97 L.Ed. 842 (1953); *Heisig*, 719 F.2d at 1156. When reasonable minds could reach differing conclusions, the court will not substitute its judgment for that of the AFBCMR. *Sanders*, 594 F.2d at 814. The court's task is to examine the decision of the AFBCMR and determine whether its decision is supported by substantial evidence. *Heisig*, 719 F.2d at 1157.

### IV. FINDINGS ON PLAINTIFF'S CLAIMS

   A. *The AFBCMR's decision to deny plaintiff's petition for correction of his record was not arbitrary or capricious.*

Plaintiff has failed to put forth "cogent and clearly convincing evidence" that the AFBCMR's decision to deny his petition to correct his military records and to award disability benefits was arbitrary, capricious, unsupported by substantial evidence or contrary to law. Based on the record and the pleadings before it, the court fails to find any substantial evidence that would raise a genuine issue as to any material fact. Therefore, because only legal issues remain, summary judgment is appropriate.

   1. There was substantial evidence for the AFBCMR to find that there was no error in the Air Force's diagnosis of "paranoid personality" at the time of discharge.

■ At the time of separation, plaintiff was entitled to disability retirement pay only if the Secretary of the Air Force determined that while entitled to basic pay, he incurred a permanent physical disability of at least thirty percent that was not of his own misconduct and was service connected. *See* 10 U.S.C. § 1201 (1976 & Supp. III 1979). While the term "physical disability" for the purposes of § 1201 includes mental disease such as paranoid schizophrenia, *see*

32 C.F.R. § 725.228,[8] it does not include personality disorders, such as paranoid personality. *See Real v. United States*, 906 F.2d 1557, 1563 (Fed.Cir.1990); *Bosch v. United States*, 27 Fed.Cl. 250, 252 n. 3 (1992). The AFBCMR concluded that there was

> [i]nsufficient relevant evidence ... to demonstrate the existence of either an error or an injustice warranting favorable action on the [plaintiff's] request for a correction of his record to show that he suffered from paranoid schizophrenia ... rather than paranoid personality; and that he be entitled to benefits accruing from his 1979 discharge....

In doing so, the Board considered the lack of evidence that plaintiff had suffered medical problems while attending OTS. The Board noted that the Air Force's records "document a thorough hospital evaluation in November 1978 due to paranoid ideations." Furthermore, the Board noted that "[d]uring a prolonged period of hospital observation, [plaintiff] failed to demonstrate any overt psychotic manifestations."

The court is not required to re-weigh the evidence, "but [to determine] whether *the conclusion being reviewed* is supported by substantial evidence." *Heisig*, 719 F.2d at 1157 (emphasis in original). In so doing, the court finds that there was substantial evidence for the AFBCMR to conclude that the Air Force's original diagnosis of paranoid personality was not erroneous.

Plaintiff also challenges the AFBCMR's decision to deny correction of his records based on a substantive question about the correct diagnosis at time of discharge. In his opposition to defendant's motion for summary judgment, plaintiff claimed that defendant's description of "paranoid personality" as a disorder with "*lifelong* patterns of maladjustment in the individual's personality structure," and defendant's admission that it had no evidence of plaintiff's "psychiatric disability" prior to enlist-

ment, are inconsistent. Therefore, plaintiff alleged, the inconsistency creates a material issue of fact which defeats defendant's motion for summary judgment. In other words, plaintiff argued that if defendant defines paranoid personality as a lifelong disorder, it should have found some evidence of the disorder prior to his discharge, and failure to do so creates an inconsistency. Plaintiff's argument has no merit.

First, defendant only admitted that it had no evidence of plaintiff's alleged psychiatric disability prior to enlistment. Plaintiff's mental health prior to enlistment has little relevance to a finding of service-connected disability. *See* 10 U.S.C. § 1201. Second, defendant's admission does not contradict the Air Force's diagnosis, as plaintiff contended. The Board had substantial evidence on the record that supported the Air Force's diagnosis. The 1981 letter from the OSG Consultant in Psychiatry, which the Board had adopted as part of its 1982 denial of plaintiff's petition for reconsideration, expressly notes that "the records clearly document the series of bizarre episodes that led to [plaintiff's] hospitalization and diagnosis.... [T]here can be no doubt the condition [paranoid personality] exists." The letter also justifies a lack of evidence of a lifelong disorder in stating that "[w]hile [individuals suffering from paranoid personality] may compensate quite well between episodes, they are easily unbalanced when challenged with situations in which they have minimal control." It is clear, therefore, that substantial evidence supports the Board's conclusion that the Air Force's diagnosis at the time of discharge was correct, and therefore that correction of his records was unnecessary.

2. The AFBCMR's decision to adopt the position of the OSG over that of the VA was not arbitrary and capricious.

---

**8.** Section 725.228 defines physical disability as: Any manifest or latent impairment of function due to disease or injury, regardless of the degree, which reduces or precludes an individual's actual or presumed ability to engage in gainful or normal activity. The term

"physical disability" includes mental disease, but not such inherent defects as behavior disorders, personality disorders, and primary mental deficiency, although they may make a member unfit for military duty.
32 C.F.R. § 725.228 (1981).

█ Plaintiff also claimed that the VA's February 2, 1989, diagnosis is evidence that the AFBCMR's conclusion to the contrary was arbitrary and capricious. The VA considered treatment reports, the opinions of two private psychiatrists, and its own neuropsychiatric reports, which diagnosed plaintiff as suffering from paranoid schizophrenia. Based on a standard of review where all reasonable doubts were resolved in favor of plaintiff, the VA concluded that plaintiff must have suffered from paranoid schizophrenia at the time of discharge.

At the outset, the court notes that the VA's rating is not conclusive. *See Finn v. United States*, 548 F.2d 340, 212 Ct.Cl. 353 (1977), *motion for reconsideration denied* (Ct.Cl.1977).

> This court has repeatedly held that the presence of some evidence by a plaintiff that he should be given a certain disability rating, even though given by highly qualified physicians, is not enough when opposing evidence is substantial.... [A]lthough the VA's determination of a plaintiff's condition may be relevant evidence[,] it is in no way binding upon the court nor conclusive on the issue of disability retirement.

*Id.* at 342 (citations omitted). See also *Lord v. United States,* holding that VA disability ratings are not determinative of issues in military pay cases. *Lord v. United States*, 2 Cl.Ct. 749 (1983).

Notwithstanding the VA's determination, the AFBCMR found that the Air Force's original diagnosis of paranoid personality was not erroneous. The Board concluded that it could find no credible evidence in favor of the validity of the VA's determination. It noted that the VA's determination was based on a brief period of observation almost ten years after discharge, which made the opinion too speculative to be accurate. Instead, the Board followed the June 1, 1989, advisory opinion of the OSG recommending denial of plaintiff's petition for relief.

The OSG opined that

> [t]he fact that the VA has service connected [plaintiff] for a diagnosis of para-

noid schizophrenia many years later with a 30% rating from [March 3,] 1986, does not negate the fact that [plaintiff] was not psychotic while on active duty nor is there any evidence of an error in the personality diagnosis.

The OSG based its opinion on the same evidence which the court has already determined was sufficient to sustain the Board's decision. Even if this court were to find that the VA's determination was reasonable, the court may not substitute its judgment for that of the AFBCMR's. *Sanders,* 594 F.2d at 814. Therefore, the AFBCMR's decision adopting the position taken by the OSG, and rejecting that of the VA, was not arbitrary and capricious.

3. The AFBCMR's finding that there was no covert intelligence activity to convince plaintiff that he was insane was supported by substantial evidence, and therefore was not arbitrary or capricious.

█ Plaintiff claimed that he had been the victim of a "covert intelligence activity to convince him that he was insane." Upon remand, the AFBCMR concluded—based on Lt. Col. Littlejohn's investigation—that there was no evidence of any such intelligence activity warranting correction of plaintiff's records.

The Board's decision is supported by substantial evidence. Lt. Col. Littlejohn was appointed by the IG to investigate the matter. During the course of his investigation, Lt. Col. Littlejohn considered all the facts that plaintiff alleged as the basis of his claim.[9] Lt. Col. Littlejohn conducted telephone interviews with plaintiff and several witnesses whose names plaintiff provided. While most interviewees did not remember plaintiff, those who did, did not recall any of the incidents that plaintiff had related. Altogether, Lt. Col. Littlejohn's investigation produced no evidence that would corroborate plaintiff's allegations of a "covert intelligence activity." Therefore, the Board's conclusion was not arbitrary and capricious.

4. Plaintiff's claim that evidence was missing from the record is unfounded.

9. *See* note 7, *supra.*

Plaintiff further claimed that the medical reports by Dr. Robert S. Alberhary and Dr. Cyril M. Franks were missing from the record considered by the Board on his petition for reconsideration. Plaintiff offered these reports to the AFBCMR as part of his September 24, 1980, petition for reconsideration of the Board's denial of reinstatement, which the Board also denied. It is evident that these letters were in fact in the record and considered by the Board. The Board found the letters to be insufficient evidence warranting reconsideration of its earlier decision to deny reinstatement.[10]

### B. The AFBCMR was not arbitrary and capricious in relying on an "ex parte" report by the Office of the Surgeon General.

Plaintiff claimed that in relying on the June 1, 1989, OSG advisory opinion, the AFBCMR was arbitrary and capricious because the opinion is *ex parte* information, and relying on *ex parte* information is *per se* arbitrary and capricious. *Ex parte* proceedings are those held "at the instance and for the benefit of one party only, and without notice to, or contestation by, any person adversely interested." BLACK'S LAW DICTIONARY 576 (6th ed. 1990). Viewing the evidence and drawing inferences in a light most favorable to the plaintiff, the court assumes for the moment that the OSG's opinion is *ex parte* since it was produced at the request of defendant for its own benefit and there is no evidence of notice to plaintiff when the request was made.

In support of his claim, plaintiff cited several cases. *See Hutter v. United States,* 345 F.2d 828, 170 Ct.Cl. 517 (1965); *Weiner v. United States,* 148 Ct.Cl. 445 (1960); *Suter v. United States,* 153 F.Supp. 367, 139 Ct.Cl. 466 (1957), *cert. denied,* 355 U.S. 926, 78 S.Ct. 383, 2 L.Ed.2d 356 (1958). In these cases, however, this court held Board decisions to be arbitrary and capricious not because they followed *ex parte* opinions of the OSG, but because the OSG opinions were "inaccurate and contrary to the evidence." *Hutter,* 345 F.2d at 833. Reliance on them thus constituted reversible error. *See Weiner,* 148 Ct.Cl. at 455; *Suter,* 153 F.Supp. at 369.[11]

The situation before the court can easily be distinguished from that in these cited cases. While it is conceivable that the OSG report can be characterized as an *ex parte* proceeding while in production, the Board took steps to eliminate any potential prejudice to plaintiff by allowing him the opportunity to contest the OSG's conclusions. In a letter dated June 21, 1989, C. Bruce Braswell, Executive Director of the AFBCMR, informed plaintiff of the OSG advisory opinion and provided him with a copy for his review and comment. The Board gave plaintiff thirty days to respond and/or to introduce other evidence. Plaintiff did so by letter dated July 3, 1989. The Board considered plaintiff's response letter in conjunction with the advisory report before denying his application on November 21, 1989. Therefore, any possible prejudicial effect was cured, and the Board was not

10. Moreover, the letters serve to contradict plaintiff's 1989 application to the Board, and the position he currently maintains before this court, *i.e.,* that his diagnosis is more serious than that initially documented by the Air Force upon discharge. Plaintiff offered the aforementioned letters as evidence that he was no longer suffering from any disorder, and should therefore have been reinstated in the Air Force. Consequently, Dr. Alberhary's report indicated that according to his diagnosis, at the current time, "[plaintiff] [was] no longer suffering from psychiatric disorder and ... [was] able to function very well...." Dr. Franks' report added that "there [were] no test indications of psycho pathology whatsoever and no test indications of any need for any form of therapeutic intervention or medication at this time." Finally, Dr.

Alberhary's report concluded that "[plaintiff] is not and never was a 'Paranoid Personality'."

11. For example, in *Weiner* the court found that "[t]he Army Board for Correction of Military Records was arbitrary and capricious when, based upon the comment and opinion of the Surgeon General's Office, it did not grant plaintiff the relief requested." *Weiner v. United States,* 148 Ct.Cl. 445, 455 (1960). The court's decision was not based on the fact that the OSG's opinion was *ex parte,* but that it was inaccurate and contrary to the evidence because plaintiff was not informed of the Board's request for an opinion nor given an opportunity to comment or furnish any evidence with respect to the contents of the opinion.

arbitrary or capricious in relying upon the OSG advisory opinion.

### C. The United States Court of Federal Claims lacks jurisdiction over Due Process Clause claims.[12]

■ Plaintiff alleged that the investigation conducted by the IG on behalf of the AFBCMR upon Judge Gibson's remand order violated his due process right to cross-examine and confront adverse witnesses. The court lacks jurisdiction over this claim.[13] See *Walker v. United States*, stating that "[i]t is now clear beyond cavil that [this court] lack[s] jurisdiction to award money damages for a claim based on the due process clause." *Walker v. United States*, 11 Cl.Ct. 77, 79–80 (1986).

The Tucker Act provides that the United States Court of Federal Claims shall have "jurisdiction to render judgment upon *any claim* against the United States *founded* either *upon the Constitution*, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (emphasis added). However, this grant of jurisdiction over "claims founded upon the Constitution" is qualified by a number of requirements. Generally speaking, a plaintiff must seek money damages against the United States alleging violation of a money-mandating constitutional provision.

Although plaintiff seeks money damages against the United States based on statutory grounds, the Due Process Clause does not provide an additional cause of action. *United States v. Connolly*, 716 F.2d 882, 887 (Fed.Cir.1983). *See generally Eastport S.S. Corp. v. United States*, 372 F.2d

1002, 178 Ct.Cl. 599 (1967). See also *Walton*, stating that "[i]nsofar as plaintiff's claim attempts to stand on the Due Process Clause of the Fifth Amendment as mandating recovery of overtime pay, this court has no jurisdiction because that constitutional provision does not in itself obligate the Federal Government to pay money damages." *Walton*, 213 Ct.Cl. 755, 757, 1977 WL 9601 (1977) (citing *Muehlen v. United States*, 529 F.2d 533, 209 Ct.Cl. 690 (1976)). The court cannot find for plaintiff on this ground.

### CONCLUSION

The court finds that the AFBCMR's decision to deny plaintiff's petition for correction of his records was not arbitrary, capricious, unsupported by substantial evidence or contrary to law since there was substantial evidence supporting the Board's determination. The Board's finding that there was no error in the Air Force's diagnosis of "paranoid personality" at the time of discharge was not arbitrary or capricious. The Board's adoption of the OSG's June 1, 1989, advisory opinion over that of the VA, and its reliance on the OSG's advisory opinion, were not arbitrary or capricious. There was substantial evidence supporting the Board's finding on remand that plaintiff had not been the victim of a covert intelligence activity to convince him that he was insane. The evidence which plaintiff claimed was absent from the record was in fact within the record and considered by the Board. Finally, the court lacks subject matter jurisdiction over plaintiff's due process claim.

Accordingly, because plaintiff failed to put forth specific facts which would create a genuine dispute as to any material fact,

12. On June 15, 1992, plaintiff filed a supplementary brief at the court's request dealing with his claim that the IG investigation violated his right to due process. The brief dealt almost in its entirety with due process issues.

13. The court, moreover, is puzzled by plaintiff's claim. It was plaintiff himself who submitted the names of the witnesses contacted by the IG. Presumably, plaintiff submitted these names because he hoped these former colleagues would testify on his behalf, giving supporting evidence

to corroborate his conspiracy allegations. That many witnesses did not remember plaintiff, or did not remember the incidents alleged, does not make them adverse witnesses—it makes them unqualified witnesses.

Furthermore, it was plaintiff who failed to appear at the court-ordered meeting of the AFBCMR on May 1, 1992, which meeting was to provide him with the opportunity to call and cross-examine witnesses and to submit any other relevant evidence.

and because defendant is entitled to judgment as a matter of law, the court grants defendant's motion for summary judgment. The Clerk is directed to dismiss plaintiff's complaint. No costs.

IT IS SO ORDERED.